JUSTO OCASIO, peticionario, *v.* TRIBUNAL DE DISTRITO DE SAN JUAN, HON. EMILIO S. BELAVAL, JUEZ, demandado.

Núm. 22.—*Sometido:* Noviembre 23, 1949.   *Resuelto:* Noviembre 24, 1949.

*Rafael F. Barbosa,* abogado del peticionario,; *R. García Mújica,* abogado del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Hace algunos años Bernardo García, dueño de una casa radicada en Carolina, y la cual dedicaba a establecimiento comercial, la dió en arrendamiento a Justo Ocasio, mediante contrato verbal de mes a mes. Ocasio la subarrendó a un tercero con el consentimiento *verbal* de García. Luego, el 7 de septiembre de 1948, Antipo Eurasquín compró la propiedad a la Sucesión García.

Eurasquín radicó una demanda de desahucio para desalojar a Ocasio y a la persona que ocupaba la propiedad mediante arreglo con él. La corte municipal dictó sentencia a favor del nuevo dueño. Ocasio apeló para ante la corte de distrito, dictando ésta la misma sentencia. A petición de Ocasio expedimos un auto de *certiorari* para revisar la decisión de la corte de distrito.

La sentencia de la corte de distrito dice en parte lo siguiente:

"El demandante adquirió la propiedad de la casa, objeto de este procedimiento, arrendada al demandado, quien a su vez le había sub-arrendado a Ignacio Betancourt mediante un sub-arriendo verbal, mientras la casa era del anterior dueño. No hay duda que el anterior dueño permitió siempre a sus arrendatarios, sub-arrendar la propiedad. Pero no hay duda tampoco que el nuevo adquirente no le concedió al arrendatario del anterior dueño el derecho a sub-arrendar ni verbalmente ni por escrito.

"El artículo 12–3 de la Ley de Alquileres Razonables de Puerto Rico, establece una causa de acción en contra del inquilino que ha sub-arrendado o cedido el uso de la propiedad arrendada, en todo o en parte, sin la autorización escrita del dueño de la propiedad. Entendemos pues, que para que el sub-arrendamiento, hecho por el arrendatario del anterior dueño, pueda ser obligatorio para el nuevo adquirente, el mismo debe ser por escrito, o sea, poseer la misma condición que impediría al anterior dueño, de proceder contra su inquilino por haber consentido por escrito al sub-arrendamiento."

No encontramos error alguno en el resultado a que llegó la corte de distrito a tenor con lo dispuesto en los artículos

12 y 12–A (3) de la Ley de Alquileres Razonables, según ha sido enmendada por la Ley núm. 201, Leyes de Puerto Rico de 1948.(¹) Por disposición legal, el artículo 12 prorroga mientras dure la emergencia todo contrato de arrendamiento, escrito o verbal, potestativamente para el inquilino aunque cambie el dueño. Pero el artículo 12–A establece un número de excepciones al artículo 12. La tercera excepción es que un arrendamiento no será prorrogado por el artículo 12 si el inquilino subarrienda sin la autorización escrita del dueño. No habiendo en este caso autorización escrita para el subarrendamiento, no podemos ver cómo podamos estar de acuerdo con la contención del peticionario de que el artículo 12 es de aplicación en vez del artículo 12–A (3). De acuerdo con la última disposición de ley, el inquilino y su subarrendatario pudieron haber sido desahuciados por el dueño anterior, quien dió consentimiento verbal pero no escrito para el subarrendamiento. En igual forma, ellos pueden ser lanzados por el nuevo dueño, que tiene los mismos derechos que su antecesor.

■■ Creemos que no tiene importancia alguna el hecho de que en este caso el contrato de subarrendamiento estuviera

---

(¹)El artículo 12 prescribe así:

"Sea cual fuere la fecha de su edificación u ocupación y tanto en las viviendas como en los locales de negocio, aunque cambie el dueño o el titular arrendador, llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario, sin alteración de ninguna de sus cláusulas, todas las cuales se reputarán vigentes. La anterior es aplicable tanto a contratos escritos como a convenios orales y la prórroga se entenderá por los plazos que fija el Artículo 1471 del Código Civil, pero nunca por un período mayor que la duración de la emergencia declarada en esta Ley. Dicha prórroga es también aplicable a solares dados en arriendo y en los cuales existen edificaciones pertenecientes a dueño distinto al de solar."

El artículo 12–A prescribe en parte como sigue:

"Como excepciones a lo dispuesto en el artículo precedente, el arrendador podrá negar la prórroga del contrato de arrendamiento y en su consecuencia promover la acción de desahucio solamente en los casos siguientes:

" . . . . . .

"3. Por haber el inquilino subarrendado o cedido el uso de la propiedad arrendada, en todo o en parte, sin la autorización escrita del arrendador."

584

en vigor, con el consentimiento verbal del dueño anterior, cuando empezó a regir el artículo 12–A(3). Insinúa el peticionario que la aprobación del artículo 12–A(3)—y su aplicación en este caso— menoscaba su contrato. Pero pasa por alto el peticionario el hecho de que su arrendamiento de mes a mes había expirado. Lo que realmente desea es que los términos de su arrendamiento *no* se hagan cumplir. Nos suplica que apliquemos el artículo 12, basado en la teoría de que por disposición de ley no puede ser desalojado aunque su contrato haya vencido. Pero la Legislatura, que tenía el poder de extender el artículo 12 a tales casos, se abstuvo de hacerlo. En virtud del artículo 12–A(3) limitó la congelación de los subarrendamientos a aquéllos otorgados por escrito. No tenemos autoridad para redactar de nuevo los artículos 12 y 12–A(3) de modo que el artículo 12 también sea aplicable a los subarrendamientos verbales.

*El auto de certiorari será anulado.*