ANTONIO A. SIMONPIETRI, demandante y apelado, *v.* LUCAS BLANCO, demandado (tercero demandante) apelado; LIP- PITT & SIMONPIETRI, INC., (tercera demandada) apelante.

Número 10649.

*Sometido:* 17 de noviembre de 1952. *Resuelto:* 8 de abril de 1953.

534

*Emilio de Aldrey,* abogado de la tercera demandada apelante; *R. Rivera Zayas, G. Rivera Cestero* y *Milton F. Rúa,* abogados del demandado tercero demandante; *José M. Valentín Esteves* y *F. Prieto Azúar,* abogados del demandante apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Lucas Blanco es dueño de un edificio de dos plantas marcado con el número 302 de la calle de Tetuán de esta ciudad. A la planta inferior se entra independientemente por la calle Recinto Sur y la ocupa el propio Blanco. En enero de 1948 éste cedió en arrendamiento la totalidad de la planta superior a Lippitt & Simonpietri. A esa planta se puede entrar únicamente por la calle de Tetuán. Aunque en el contrato celebrado entre Blanco y Lippitt & Simonpietri se hizo constar que la arrendataria no podría subarrendar sin el previo consentimiento por escrito del arrendador, aquélla subarrendó

parte de la segunda planta al demandante, Lic. Antonio A. Simonpietri, y a otras personas. [1]

Como a las 6:30 de la tarde del día 30 de diciembre de 1949 el subarrendatario Simonpietri bajaba de su oficina profesional por la escalera que de la segunda planta conduce a la calle de Tetuán y mientras así lo hacía el tacón del zapato izquierdo se le encajó en la ranura existente en una de las losetas de las huellas de la escalera, lo que le hizo perder el balance y le obligó a torcer su cuerpo abruptamente. Con tal motivo sufrió una torcedura de la rodilla izquierda, con fractura de avulsión en el borde anterior de la tibia y una hidroartrosis de la rodilla, y tuvo que ser hospitalizado. Fundado en ese accidente Simonpietri inició demanda de daños y perjuicios contra Blanco. Éste contestó [2] y a su vez solicitó permiso para presentar demanda de tercero contra la arrendataria Lippitt & Simonpietri. Al serle concedido, ésta contestó tanto a la demanda original como a la del tercero demandante. Poco después fué el pleito a juicio y el tribunal a quo dictó sentencia declarando sin lugar la demanda en cuanto a Blanco y condenando a Lippitt & Simonpietri a pagar al demandante $427 por daños especiales y $4,500 por sufrimientos físicos y mentales y por la incapacidad por éste sufrida, más las costas y $400 para honorarios de abogado.

La tercera demandada apeló. Los dos primeros errores por ella señalados pueden ser discutidos conjuntamente. Son al efecto de que el tribunal sentenciador erró: (1) al resolver que ella tenía el control absoluto de la escalera en su calidad de arrendataria de la planta alta del edificio y que por tal razón venía obligada a mantener dicha escalera en buenas condiciones para su uso, y (2) al resolver que no se demostró

---

[1] A los fines del presente caso la no autorización para subarrendar carece de importancia.

[2] En los autos hay dos contestaciones del demandado Blanco, presentadas por distintos abogados.

mediante prueba al efecto que al otorgarse el contrato de arrendamiento entre el arrendador y ella existiera ya el defecto en la escalera.

■ No se cometieron estos errores. El tribunal a quo tuvo ante sí suficiente prueba para llegar a la conclusión de que la apelante tenía el dominio exclusivo de la escalera. La prueba a este respecto demuestra, según hizo constar en sus conclusiones de hechos, que si bien en el contrato de arrendamiento celebrado entre Blanco y la tercera demandada no se hizo constar de manera expresa quién tendría el dominio de la escalera, la tercera demandada pagaba la luz que alumbraba la misma, la limpiaba y tenía la exclusividad en cuanto a la entrada a la segunda planta, ya que Blanco no retuvo llave alguna de la puerta principal que para la escalera donde ocurrió el accidente a la segunda planta conducía y mucho menos del candado que puso en dicha puerta la apelante; y que la apelante tenía el control absoluto de esas llaves y las entregaba únicamente a sus subarrendatarios. Todo ello en adición a otros pequeños detalles tendientes a demostrar de manera inequívoca el dominio absoluto de la escalera por la apelante. Estuvo, pues, dicho tribunal justificado en su conclusión a este respecto.

■ En el contrato de arrendamiento celebrado por escrito entre el dueño de la propiedad y la tercera demandada tampoco se hizo constar en forma alguna la existencia del defecto en la escalera. Según el artículo 1452 del Código Civil, ed. 1930, "A falta de expresión del estado de la finca al tiempo de arrendarla, la ley presume que el arrendatario la recibió en buen estado, salvo prueba en contrario." *Cf. Cole* v. *Escambrón Development Co.*, 73 D.P.R. 520, 529. La evidencia que el tribunal sentenciador tuvo ante sí no bastó, a su juicio, para destruir esa presunción. Esta conclusión está igualmente justificada.

■■ El siguiente error señalado es en el sentido de que dicho tribunal erró al resolver que el arrendador Blanco no

tenía conocimiento del estado de la escalera, que no siendo el defecto que presentaba la misma uno perceptible a simple vista, requería la previa notificación al dueño de la propiedad por aquéllos que tuvieran el control de la escalera, y que la falta de tal notificación releva al propietario de responsabilidad.

Como resultado de la investigación ocular practicada y con vista de la prueba que tuvo ante su consideración, el tribunal a quo hizo constar en sus Conclusiones de Hechos "que en el cuarto escalón, bajando del segundo tramo, hay una grieta entre las losetas y el brocal. *Es una grieta irregular, formada por el transcurso del tiempo, perceptible si uno dirige fijamente su mirada a ella,* y que corre paralela con la terminación de las losetas y el brocal. Ésta es la hendidura que causó el accidente, y en su parte más ancha, dentro de su extensión de cinco y media (5½) pulgadas, tiene una (1) pulgada, y en su parte más estrecha media (½) pulgada; su parte más profunda es de casi una (1) pulgada. La superficie de las losetas queda al nivel del brocal y *no se nota la grieta cuando uno pone de plano el pie entre la loseta y el brocal; para notarse el desperfecto uno tiene que llevar fijamente la mirada a la hendidura, pues de lo contrario lo que se ve es una línea negra al igual que en los demás escalones donde existían grietas que han sido corregidas con cemento.* Esta grieta es debida a que en la terminación de las losetas con el brocal se le han ido cayendo pedacitos, que al desaparecer han hecho un oleaje en forma irregular, y también debido a que el cemento o mezcla que se le puso para unirlas con el brocal con el uso ha ido poco a poco desapareciendo. Tanto la escalera como el zaguán están claramente alumbrados. Para la fecha del accidente que motiva esta causa de acción, el demandante ocupaba conjuntamente con otro inquilino, a virtud de un contrato de subarrendamiento oral celebrado con Lippitt & Simonpietri, Inc., una de las habitaciones de dicha segunda planta, por la cual pagaba a dicha arrendataria una consideración acordada." (Bastardillas nuestras.)

De conformidad con el artículo 1444 del Código Civil, ed. 1930, según fué enmendado por la Ley 220 de 12 de mayo de 1942 (pág. 1177):

"El arrendador está obligado:

"(1) A entregar al arrendatario la cosa objeto del contrato.

"(2) A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.

"(3) A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato.

"(4) A suscribir y entregar al arrendatario un recibo por cada pago hecho por éste." (³)

Empero, para que el arrendador esté en la obligación impuéstale por el inciso (2) del artículo 1444, supra, es menester, a tenor de lo dispuesto por el artículo 1449 del mismo cuerpo legal que el arrendatario ponga *"en conocimiento del propietario, en el más breve plazo posible, . . . . la necesidad de todas las reparaciones comprendidas en el número 2 del artículo 1444. . . . ."* (Bastardillas nuestras.) En el presente caso, repetimos, la prueba demuestra no sólo que la arrendataria tenía el dominio absoluto de la escalera en cuestión, sino también que ella jamás puso en conocimiento del demandado Blanco que en el piso de ésta existían defectos de clase alguna. (⁴) En su consecuencia, la arrendataria no cumplió con el deber impuéstole por la ley. Por otra parte, si bien la prueba demostró que el demandado Blanco esporádicamente utilizaba dicha escalera para ir a visitar a su amigo Max Levine, uno de los subarrendatarios de la segunda planta, como el defecto en la escalera era latente, a él no puede imputársele conocimiento implícito del mismo. Para que bajo las circunstancias del presente caso al dueño de un edificio pudiera imputársele negligencia, era necesario demostrar

---

(³) La enmienda de 1942 consistió meramente en la adición del inciso (4).

(⁴) Con anterioridad al accidente la arrendataria notificó a Blanco de ciertos defectos existentes en la balaustrada o pasamano de la escalera. Los mismos fueron corregidos. Aquí, sin embargo, esa notificación y esas reparaciones no desempeñan papel de clase alguna.

que él tenía conocimiento del defecto existente en la escalera —cf. *Ramírez* v. *Hotel Condado*, 68 D.P.R. 953; *Miranda* v. *Méndez*, 50 D.P.R. 850—y que teniendo tal conocimiento dejó de hacer las reparaciones que le incumbían. Aquí no hubo tal demostración. Para que bajo los hechos del caso de autos, pueda hacerse responsable al dueño del edificio, debe existir primeramente alguna actuación u omisión de parte suya que pueda calificarse de negligente. Desconociendo Blanco el estado de la escalera, no puede imputársele negligencia alguna. Conforme se dice en *Vázquez* v. *Antuñano*, 61 D.P.R. 770, 777, citando de *Restatement of Torts*, sección 357, pág. 968, "A menos que el contrato estipule que el arrendador inspeccionará la propiedad para cerciorarse de la necesidad de reparaciones, *un contrato para mantener el interior en condiciones de seguridad exige responsabilidad del arrendador, si, y solamente si, no ejercita un cuidado razonable después que el arrendatario le haya notificado la necesidad de las reparaciones.*" (⁵) (Bastardillas nuestras.)

■■ Finalmente insiste la apelante en que el tribunal a quo erró al dictar sentencia en su contra. Tampoco se ha cometido este error. En lo que al subarrentario concierne, éste ocupa con relación al subarrendador la misma posición que el arrendatario ocupa respecto del arrendador. *Ortiz* v. *McCormick Steamship Co.*, 57 D.P.R. 560, 565. Sobre el par-

---

(⁵) En el caso de autos, lejos de estipular el contrato de arrendamiento que el dueño inspeccionaría la propiedad para cerciorarse de la necesidad de reparaciones, el mismo en el párrafo (*f*) de la cláusula quinta dispone que:

"El propietario no será responsable de ningún daño que pueda ocasionarse a la propiedad, así como a los oficiales y accionistas que componen la corporación arrendataria o a sus empleados, sirvientes o dependientes o al público en general que penetre o utilice el local arrendado por causa de ningún desperfecto o defecto del edificio o sus terrenos y alrededores, ni por ningún accidente sufrido durante la permanencia de la arrendataria en el disfrute del local, siendo esta responsabilidad única y exclusiva de dicha arrendataria que asume la obligación de cuidar y mantener el local en condiciones de absoluta seguridad."

Aunque dada la conclusión a que estamos llegando sobre la responsabilidad del dueño, se hace innecesario determinar el alcance de una esti-

ticular Manresa en sus Comentarios al Código Civil Español, Tomo 10, ed. de 1950, se expresa así a la pág. 521:

". . . *los derechos y obligaciones que recíprocamente compe- ten a subarrendador y subarrendatario, se regularán por lo que el Código establece para arrendador y arrendatario.* Así, por ejemplo, el subarrendador estará obligado a entregar al sub- arrendatario la cosa objeto del contrato, a hacer en ella durante el subarriendo todas las reparaciones necesarias a fin de conser- varla en estado de servir para el uso a que ha sido destinada, y a mantener al subarrendatario en el goce pacífico del subarriendo por todo el tiempo del contrato; . . . ." (Bastardillas nuestras.)

Siendo el defecto en la escalera uno latente, no obstante el hecho de que él subiera y bajara por ella varias veces al día, el demandante no estaba en la obligación de notificar a la sub- arrendataria de la existencia de tal defecto. *Ortiz* v. *Mc- Cormick Steamship Co.*, supra. Por tanto, el hecho de que el demandante no pusiera en conocimiento de la tercera deman- dada la existencia de ese defecto, no releva a ésta de la respon- sabilidad que ella tenía de hacer en la cosa arrendada todas las reparaciones necesarias para conservarla en estado de servir para el uso a que la misma se destinaba y a mantener al subarrendatario en el goce pacífico del local arrendado. Su omisión a este respecto constituyó negligencia de la cual debe responder.

*La sentencia apelada será confirmada.*

---

pulación como la antes citada, véanse los artículos 10 y 14 de la Ley 464 de 25 de abril de 1946 (págs. 1327, 1343 y 1351) preceptivos de que:

"Artículo 10.—El arrendador está obligado a hacer en la propiedad alquilada todas las reparaciones necesarias durante el arrendamiento a fin de conservarla en estado de servir para el uso a que ha sido destinada, y a mantener en funcionamiento todos sus servicios;..."

"Artículo 14.—Será nula toda cláusula o estipulación de un contrato de arrendamiento que prohíba al inquilino el disfrute de la propiedad arrendada, o que le prohíba o impida alojar niños en la misma, o que le imponga condiciones injustas, abusivas o irrazonables, *o que apareje la re- nuncia de cualquier beneficio establecido en esta Ley.* (Bastardillas nuestras.)

". . . . . . . . . ."

Tampoco es necesario discutir el alcance que tal estipulación pueda te- ner sobre los derechos de un tercero.