LUIS E. SOLER, INC., demandante y apelante, *v.* FERNANDO PONT FLORES, demandado y apelado.

Número 11706.

*Sometido:* 6 de diciembre de 1955. *Resuelto:* 18 de enero de 1956.

880

*Luis Ríos Algarín,* abogado del apelante; *F. Ponsa Feliú,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

No se desprende de los autos desde cuándo ni a virtud de qué contrato la corporación Hotel Palace, Inc.,([1]) es o era arrendataria del edificio de dos plantas situado en el número 155 de la calle de Tetuán, de San Juan. Por ellos sabemos, sin embargo, que el Hotel subarrendó el lado derecho entrando de la planta baja del edificio a Fernando Pont Flores y el izquierdo a Luis E. Soler, Inc.;([2]) que las personas que hoy

---

([1]) En lo sucesivo nos referiremos a la corporación Hotel Palace, Inc., simplemente como "el Hotel."

([2]) De aquí en adelante nos referiremos a la corporación Luis E. Soler, Inc., meramente como "Soler" o como "la demandante."

Soler ha estado en posesión del local arriba mencionado desde 1946, y Pont Flores, según presumimos, desde 1 de noviembre de 1952.

día constituyen la sucesión de la dueña anterior de ese edificio cedieron el mismo a la demandante a virtud de un contrato de arrendamiento, otorgado por escritura pública el 14 de febrero de 1954; que un año cuatro días más tarde—18 de febrero del pasado año—Soler instó ante el Tribunal Superior, Sala de San Juan, demanda de desahucio contra Pont Flores; que luego de celebrado un juicio en los méritos, dicha demanda fué declarada sin lugar; y que de la sentencia así dictada la demandante apeló para ante este Tribunal.

En la demanda presentada Soler alega en síntesis que es arrendataria "y como tal es asimismo usufructuaria" de la casa núm. 10 de la calle de Tetuán, de San Juan; ([3]) que el demandado ocupa un local en el ala derecha entrando de la misma; que al constituirse en "usufructuaria" de la finca descrita la demandante "notificó por escrito en forma fehaciente al demandado el día 11 de marzo de 1954 su intención y necesidad de ocupar toda la casa para su propio negocio y por lo tanto [que] no renovaría el convenio existente entre el demandado y los dueños de la propiedad o sean los arrendadores del demandado; ([4]) que ha vencido el plazo acordado para el arrendamiento; que la demandante interesa de buena fe retirar dicha propiedad del mercado de alquileres para ocuparla con un negocio de su propiedad"; y "que no obstante los requerimientos hechos al demandado éste continúa ocupando el inmueble descrito sin tener relación contractual alguna con la demandante." Véanse 17 L.P.R.A. secs. 181 a 214 y 32 L.P.R.A. secs. 2821 a 2838.

Contestó el demandado admitiendo que ocupa un local en la casa descrita, negando los demás hechos esenciales de la demanda y alegando como defensa especial que ésta no aduce hechos determinantes de una causa de acción. Fué el pleito a juicio.

---

([3]) Durante el juicio se aclaró que el nuevo número del edificio lo es el 155.

([4]) No surge de los autos la existencia de convenio de clase alguna entre el demandado Pont Flores y los dueños de la propiedad.

La prueba de la demandante consistió en el testimonio de su presidente, Luis E. Soler, tendiente a demostrar que aquélla necesitaba el local en cuestión para ampliar su negocio de venta de pasajes; en la escritura pública a que se ha hecho mención, a virtud de la cual se cede en arrendamiento a Soler la totalidad del edificio de referencia; y en una carta dirigida por la demandante al demandado en 11 de marzo de 1954, informando a éste que ". . . muy en contra de mis fervientes y sinceros deseos, me veo obligado a dar por terminado el subarrendamiento de mes a mes que tenías sobre la planta baja (derecha entrada) (sic) del aludido local, y suplicarte que comiences a hacer todas las gestiones conducentes al traslado . . . de tu negocio a otro lugar." La prueba del demandado consistió en la copia de un contrato privado de arrendamiento celebrado el 15 de noviembre de 1952 entre el Hotel, Pont Flores y Soler,(5) y en el testimonio de Juan González,(6) tendiente a demostrar que el propósito aparente de Soler era ceder en arrendamiento la planta alta del edificio.

Sostiene Soler en primer lugar que el tribunal a quo incidió al concluir (1) "que no existe prueba alguna demostrativa de que el contrato entre el demandado y su arrendador Hotel Palace, Inc., haya sido rescindido o en alguna forma terminado; que tampoco existe prueba alguna demostrativa de que haya cesado el contrato de arrendamiento existente entre los dueños del edificio y Hotel Palace,

---

(5) A virtud de ese contrato privado el Hotel, "como arrendatario . . . de la propietaria del inmueble, sucesión de doña Juana Power de Cortés" cede en arrendamiento a Pont Flores el local sito en el lado derecho entrando del primer piso del edificio número 155 de la calle Tetuán de esta ciudad. Por su cláusula tercera se hace constar que "es condición esencial de este contrato que el arrendatario don Fernando Pont Flores cede a Luis E. Soler, Inc., la habitación que queda detrás de la oficina de dicha firma y que quedará comprendida dentro del contrato de arrendamiento que tiene Luis E. Soler, Inc., con el Hotel Palace, Inc." El término de este contrato será de mes a mes, a partir de noviembre 1 de 1952.

(6) Las partes estipularon además que, de ser llamado a declarar, Wallace Carrillo declararía por la parte demandada lo mismo que declaró González.

Inc." En el tercer párrafo de la opinión emitida por el tribunal sentenciador aparecen las palabras que sirven de objeto a este señalamiento. El presente caso gira en gran parte, si no fundamentalmente, en torno de la prueba de la existencia o inexistencia del contrato de arrendamiento entre el Hotel y los dueños del edificio.

El caso de *Galiñanes Hnos.* v. *Tribunal Superior, Universal Furniture Co., Inc., interventora,* 77 D.P.R. 881 (1955), guarda cierta similitud con el presente. Allí la cuestión envuelta, conforme hicimos constar en el párrafo inicial de la opinión, fué ". . . si un arrendatario puede desahuciar a un subarrendatario suyo por necesitar de buena fe el local subarrendado para ampliar su negocio." Dijimos en el curso de la opinión que:

"Como se trata de un derecho transmisible, 'el subarriendo es un nuevo arrendamiento completamente independiente del arrendamiento primitivo'; 10 Manresa 520 (edición citada) [quinta]. Por lo tanto, el arrendatario cuando se convierte en subarrendador, tiene parte del derecho de propiedad del dueño enajenado a su favor y puede transmitir esa parte del derecho de propiedad a un subarrendatario *mientras su contrato esté en vigor. Lo que termina la transmisión parcial del derecho de propiedad que se produce en el arrendamiento es la terminación del contrato. Si el contrato entre el subarrendador y el subarrendatario termina, el subarrendador puede ejercer contra el subarrendatario todos los derechos de propiedad que él adquirió del dueño-arrendador en el contrato original. Siendo esto así, tiene derecho a ejercitar contra el subarrendatario todos los derechos que para el goce o disfrute de la cosa tendría el dueño, puesto que tales derechos están enajenados a él.*

"Por eso el artículo 22 de la Ley número 464 de 25 de abril de 1946, según quedó enmendado por !a Ley número 201 de 14 de mayo de 1948, que trata de las definiciones de los términos empleados en la ley, al disponer que *'propietario y dueño incluyen a todo* propietario, dueño, arrendador, *subarrendador,* administrador, persona natural o jurídica, gerente y apoderado *para los efectos de la administración de una o más propiedades de alquiler'* resulta plena de sentido jurídico, . . . Por eso el artículo 12-f de la Ley de Alquileres Razonables incor-

porado por la Ley número 201 de 14 de mayo de 1948 dispone que *'La prórroga involuntaria prescrita en el artículo 12 será aplicable igualmente a subarriendos durante todo el tiempo que el arrendatario esté en posesión del local,'* equiparando en efectos jurídicos al arrendamiento y al subarriendo, en las relaciones entre dueño-arrendador y arrendatario y arrendatario-subarrendador y subarrendatario." (Bastardillas nuestras.)

Así pues, no hay duda de que un arrendatario que a su vez es subarrendador puede instar acción de desahucio contra el subarrendatario para desalojar a éste de la propiedad que ocupa. Conforme dijimos en *Simonpietri* v. *Blanco* v. *Lippitt & Simonpietri*, 74 D.P.R. 533, 539, "en lo que al subarrendatario concierne, éste ocupa con relación al subarrendador la misma posición que el arrendatario ocupa respecto del arrendador."

██ Aquí, sin embargo, la prueba no demuestra que el demandado sea subarrendatario de Soler. · Tampoco demuestra que Soler cobrara por el uso del local ocupado por Pont Flores. No obstante, el hecho de que entre Soler y el demandado no exista relación contractual alguna no es óbice para que no proceda la acción de desahucio.

Ya hemos indicado que la prueba de la demandante tendió a demostrar que la corporación estaba en posesión del edificio a virtud de un contrato de arrendamiento otorgado por escritura pública entre ella y los actuales dueños de la propiedad; que ella necesitaba el local en cuestión para ampliar su negocio de venta de pasajes; y que oportunamente lo notificó al demandado de su deseo de que éste lo desalojara. Tendió a demostrar, asimismo, la prueba de la demandante que ella interesaba ese local de buena fe([7]) y que no era su

---

([7]) El art. 12 (A) de la Ley 464 de 1946, según fué enmendado por la Ley núm. 201 de 1948 (págs. 575, 581), dispone que:

"Como excepciones a lo dispuesto en el artículo precedente, el arrendador podrá negar la prórroga del contrato de arrendamiento y en su consecuencia promover la acción de desahucio solamente en los casos siguientes:

". . . . . . . . .

"(7) Por necesitar para sí de buena fe, el local de comercio o negocio. . . ."

propósito subarrendar ninguna parte del edificio. La prueba del demandado, según ya hemos indicado, meramente tendió a demostrar que su posesión era legal por haber celebrado previamente un contrato de arrendamiento con el Hotel, así como que la demandante tenía el propósito de subarrendar la segunda planta.

Si bien de acuerdo con el art. 12 de la Ley 464 de 25 de abril de 1946 (pág. 1327), según fué enmendado por la Ley núm. 201 de 14 de mayo de 1948 (págs. 575, 579)—17 L.P.R.A. sección 192—([8]) "llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario," por lo que podría presumirse que el contrato de arrendamiento que previamente tenía el Hotel aún subsistía y, por ende, que el contrato de subarrendamiento, a virtud del cual el demandado estaba en posesión, también estaba en vigor, la prueba de la demandante destruyó tal presunción. Ante esa situación al demandado incumbía demostrar que su posesión era legal, bien porque el contrato del Hotel aún estaba en vigor, y que, por tanto, el suyo también lo estaba, o en cualquiera otra forma. No presentó prueba a ese efecto. Debió, en su consecuencia, decretarse el desahucio.

El caso de *Ruiz* v. *Licha*, 64 D.P.R. 804, se asemeja mucho al de autos. En él se dice que "el demandante tomó en arrendamiento . . . un local situado en el piso bajo de una casa en San Juan, estando dicho local dividido en dos por un tabique. El anterior arrendatario había dado en arrendamiento una de las dos subdivisiones al aquí demandado. Tan pronto como hubo obtenido el arrendamiento del local, el demandante se lo notificó al demandado, informándole al mismo tiempo que podía continuar en el local que había venido ocu-

---

([8]) Véanse *Sucn. Pérez* v. *Gual*, 75 D.P.R. 385; *Roselló Hnos.* v. *Figueroa*, 74 D.P.R. 432; *Torres* v. *Biaggi*, 72 D.P.R. 869; *Vidal* v. *Corte*, 71 D.P.R. 582; *Díaz* v. *Morales*, 71 D.P.R. 692; *Ocasio* v. *Tribl. de Distrito*, 70 D.P.R. 581; *Pérez* v. *Tribl. de Distrito*, 70 D.P.R. 656; *Rodríguez* v. *Alvarez*, 70 D.P.R. 977.

pando, siempre que se comprometiese a pagar un canon de $100 mensuales, en vez de los $75 que antes pagaba." Ruiz instó demanda de desahucio en precario alegando "que el demandado se negó expresamente a aceptar las nuevas condiciones y ha seguido detentando la posesión del local sin pagar canon o merced alguna y sin tener contrato alguno de subarrendamiento con el demandante." Visto el caso, el tribunal de instancia dictó sentencia desestimando la demanda. En apelación revocamos la sentencia y devolvimos el caso para ulteriores procedimientos. Resolvimos que "el demandado admite que el demandante es . . . el arrendatario del local; que el demandante se lo notificó oportunamente, informándole al mismo tiempo las condiciones para la celebración de un nuevo contrato; que el demandado se negó a aceptar dichas condiciones y ha continuado detentando la posesión del local, *sin tener contrato alguno con el demandante y sin pagar canon o merced alguna.* El demandado no ha hecho ninguna alegación que pueda ser considerada como una impugnación de título del arrendador, ni tampoco como la reclamación de un derecho sobre el inmueble. *Admite que no tiene derecho alguno a continuar en la posesión y disfrute del local que ocupa,* . . .

". . . es indudable que el arrendatario adquiere por virtud de dicho contrato el derecho a disfrutar de la finca *y el de solicitar que sean lanzados de ella todos aquéllos que sin ostentar título alguno que les dé derecho a la posesión pretendan continuar en ella en contra del derecho del arrendatario.*" (Bastardillas nuestras.)

No obstante la similitud existente entre el caso de autos y el de *Ruiz* v. *Licha,* supra, los mismos son distinguibles. En ese caso el subarrendatario admitió plenamente que el demandante era arrendatario del local en cuestión, mientras que aquí el demandado no ha admitido en forma alguna que la demandante sea arrendataria del local que él ocupa. Llegamos no obstante al mismo resultado que se llegó en aquél, debido a que si bien aquí Pont Flores no admitió que la de-

mandante fuera arrendataria del edificio, la prueba por ésta aducida así lo demostró, a que Soler estaba en posesión de todo el edificio—incluyendo los locales que anteriormente ocupaba el Hotel—excepción hecha del local ocupado por Pont Flores, y a que éste en forma alguna nos ha convencido de que la posesión que ostenta es una posesión legal. En verdad, lo fundamental en casos de esta naturaleza es la determinación de si el demandado está en posesión a virtud de algún título que le dé derecho a tal posesión. De no estarlo, como en este caso, procede el desalojo.

Dada la conclusión anterior es innecesario discutir los demás errores señalados por la demandante.

*Debe revocarse la sentencia apelada y en su lugar dictarse otra decretando el desahucio.*

El Juez Asociado Sr. Negrón Fernández no intervino.