Jesús M. Rossy, demandante y apelante, *v.* Rafael del Valle Zeno, demandado y apelado.

No. 3665.—*Visto:* Junio 26, 1925. *Resuelto:* Noviembre 10, 1925.

1. ARRENDADOR Y ARRENDATARIO—DE LOS CONTRATOS DE ARRENDAMIENTO Y CONVENIOS EN GENERAL—REQUISITOS Y VALIDEZ—NATURALEZA DEL CONTRATO DE ARRENDAMIENTO.—Un convenio en que una parte cede a otra en arrendamiento una parcela de terreno para dedicarlo ésta a la extracción de piedra, y en el cual el precio del contrato se enumera en parte fijándose una suma mensual hubiera o no extracción· y además una parte alícuota por cada metro cúbico según la producción excediera de cierto límite, disponiéndose la manera de comprobar los metros cúbicos de piedra utilizados por el arrendador, es por su naturaleza un contrato de arrendamiento.

2. ARRENDADOR Y ARRENDATARIO—COSA OBJETO DEL ARRENDAMIENTO (*Premises*) Y GOCE Y USO DE LA MISMA—POSESIÓN, GOCE Y USO—DISTINCIÓN ENTRE LOS VOCABLOS "GOCE" Y "USO".—Los vocablos "goce" y "uso" que emplea el artículo 1446 del Código Civil no envuelven el mismo concepto y son los que denotan la diferencia entre el arrendamiento y la venta, pues el segundo no faculta al arrendatario para disponer de la cosa, y el primero le permite

hacer suyos los frutos que produzca. El derecho a las utilidades se ha extendido dentro de la concepción del arrendamiento a la apropiación de la sustancia misma de la cosa, como ocurre en las llamadas industrias extractivas.

3. ARRENDADOR Y ARRENDATARIO—DE LOS CONTRATOS DE ARRENDAMIENTO Y CONVENIOS EN GENERAL—OBLIGACIONES DEL ARRENDATARIO—DEVOLUCIÓN DE LA FINCA ARRENDADA AL CONCLUIR EL ARRIENDO.—El precepto del artículo 1464 del Código Civil de que el arrendatario debe devolver la finca, al concluir el arriendo, tal como la recibió, no es imperativo, sino de naturaleza supletoria y puede ser derogado o modificado por la voluntad de los contratantes.

4 ARRENDADOR Y ARRENDATARIO—DE LOS CONTRATOS DE ARRENDAMIENTO Y CONVENIOS EN GENERAL—REQUISITOS Y VALIDEZ—PRECIO CIERTO DEL CONTRATO—PRECEPTOS ESTATUTORIOS.—El precio cierto de que habla el artículo 1446 del Código Civil quiere decir precio que se puede enumerar o estimar según se trate de dinero o especies.

5. ARRENDADOR Y ARRENDATARIO—DE LOS CONTRATOS DE ARRENDAMIENTO Y CONVENIOS EN GENERAL—REQUISITOS Y VALIDEZ—PRECIO CIERTO DEL CONTRATO—PARTICIPACIÓN EN LAS UTILIDADES DE LA COSA ARRENDADA.—La adición, al precio de un contrato de arrendamiento de finca para la extracción de piedra, de una cantidad alícuota por cada metro cúbico dependiente de que la producción exceda de cierto límite, si bien hace irregular la percepción del precio, es una modalidad que no sólo no desvirtúa el nombre con que las partes calificaron el contrato, sino que puede convivir con el arrendamiento y no hace complicada ni compleja la forma de pago.

6. ARRENDADOR Y ARRENDATARIO—DE LOS CONTRATOS DE ARRENDAMIENTO Y CONVENIOS EN GENERAL—REQUISITOS Y VALIDEZ—PACTOS QUE NO DESVIRTÚAN LA ESENCIA DEL CONTRATO.—El acuerdo de las partes al efecto de que el arrendatario queda obligado a destinar la finca arrendada al solo objeto de la extracción de piedra y que ninguno de ellos puede ejercer la misma industria, es un pacto lícito que en nada desvirtúa la esencia del contrato de arrendamiento.

7. ARRENDADOR Y ARRENDATARIO—DE LOS CONTRATOS DE ARRENDAMIENTO Y CONVENIOS EN GENERAL — REQUISITOS Y VALIDEZ — RESCISIÓN DEL CONTRATO—MOTIVOS QUE PUEDEN DAR LUGAR A LA RESCISIÓN.—En cuanto a los motivos que pueden dar lugar a la rescisión del contrato de arrendamiento, el precepto del artículo 1459 del Código Civil no limita ni altera la acción de desahucio cuando existe el incumplimiento de cualquiera de las condiciones que dan origen a dicha acción y más bien coexiste con ella.

8. ELECCIÓN DE REMEDIOS—DERECHO A ELEGIR EL PROCEDIMIENTO—RESCISIÓN DEL CONTRATO DE ARRENDAMIENTO.—Al arrendador corresponde hacer la elección del procedimiento para obtener la rescisión de un contrato de arrendamiento, ya haciendo uso del sumario de desahucio o el más amplio del juicio ordinario, y una vez hecha la elección la corte no tiene poder para sustituir su derecho de acción.

SENTENCIA de *M. Rodríguez Serra,* J. (Segundo Distrito, San Juan), desestimando la demanda, con costas. *Revocada y devuelto el caso.*

*Eduardo Acuña, Jesús M. Rossy* y *Luis Janer,* abogados del apelante; *Jacinto Texidor,* abogado del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

Este es un procedimiento sumario de desahucio. La demanda descansa en dos causas de acción: la primera, atañe al incumplimiento de ciertas condiciones del contrato; y la segunda, a la falta de pago del canon de arrendamiento.

La acción se siguió por todos los trámites que regula el procedimiento especial de desahucio, pero es de notar que durante el juicio no se limitaron los términos o plazos para la presentación de las pruebas, permitiéndose una amplitud completa por una y otra parte en la práctica de las mismas.

El juez inferior, sin embargo, no apreció los méritos de la evidencia y se limitó únicamente en su decisión a resolver el punto técnico que consideró de previo pronunciamiento, refiriéndose a la naturaleza del contrato base de la demanda y declarando que no se trataba de un contrato de arrendamiento, desestimó la demanda para que las partes ventilaran los méritos del caso en el juicio plenario. Es singular, no obstante, que las partes habían aceptado el debate dando por sentado el concepto de arrendamiento del contrato, pues el demandado se concretó en su contestación a negar los hechos sustanciales de la demanda y a establecer nuevas defensas que en nada se relacionaban con la calificación o nombre del convenio y sin que se intentara impugnar el procedimiento especial que había sido elegido por el demandante.

[1] El contrato escrito que se ofreció en evidencia no difiere de la relación que del mismo se hace en la demanda. Según se lee del convenio el demandante cede en arrendamiento al demandado una parcela de terreno de 5½ cuerdas que se describen y demarcan por sus puntos. Por la cláusula 2ª el arrendatario dedicará la parcela de terreno "a la extracción, utilización para él y venta de piedra en cualquiera de sus formas en bloques o sillares, bruta, triturada y pulverizada . . . .", etc. Por la 4ª se estipula que la compensación que el arrendatario pagará al arrendador se esta-

blecerá bajo la base de "Derecho de cantera" en la manera y proporción que especifica la cláusula 5ª que literalmente dice:

"Quinta: El 'Derecho de Cantera,' anteriormente dicho, consistirá en el pago por el señor del Valle Zeno al señor Rossy de una determinada cantidad de dinero por cada metro cúbico de piedra utilizado para la venta por el primero, de acuerdo con la siguiente escala:

"A. Si la extracción fuere de cuatrocientos metros cúbicos durante cada mes o menos de esa cantidad, o aun cuando no hiciese extracción alguna, el señor del Valle Zeno pagará al señor Rossy la suma de cien dólares, por cada mes, verificándose este pago dentro de los cinco primeros días del siguiente mes de la extracción y empezando a contarse desde la fecha del otorgamiento de este contrato que firman ambos contratantes.

"B. Si la extracción se verificase por cantidad de cuatrocientos metros cúbicos en adelante, entonces el señor del Valle Zeno, además de los cien dólares fijados en el párrafo anterior, letra A, pagará al señor Rossy la suma de diez centavos por cada metro cúbico de piedra, que, en adición a los cuatrocientos metros fijados en el párrafo anterior, letra A, utilice el señor del Valle Zeno para la venta, verificándose también el pago dentro de los cinco primeros días del siguiente mes de la extracción y empezando a contarse desde la fecha del otorgamiento de este contrato, que firman ambos contratantes."

Y por la cláusula 6ª se dispone la manera de comprobar el número de metros cúbicos de piedra utilizados por el arrendatario, y en tal sentido "el encargado del señor Rossy llevará nota diaria de la piedra de acuerdo con los comprobantes de 'conduce' o boletos que por cada *truck* u otro vehículo que salga de la finca le entregará el encargado del señor Valle Zeno", . . . . etc.

El razonamiento del juez inferior en su opinión para calificar bajo esos términos el contrato de compraventa de piedra, se resume diciendo: 1º, el predio de que se trata es una cantera de piedra y no era objeto de cultivo o explotación agrícola o pecuaria; 2º, no se deja al libre arbitrio del llamado arrendatario el modo de usarlo o disfrutarlo y se

le impone una forma precisa de disfrute; 3º, que el goce o
uso de que habla el artículo 1446 del Código Civil son tér-
minos que implican continuidad de existencia de la cosa
usada, y que en este contrato su objeto es, en último tér-
mino, vender, desprendiéndose definitivamente el dueño de
la cosa que para él deja de existir; y 4º, establecer como
cuestión meritoria que el demandado a quien se le obliga a
destinar el predio a la extracción de piedra ha hecho una
inversión por valor de $30,000 en la instalación de maqui-
narias trituradoras y otros implementos de extracción y
compra de autocamiones de carga para el transporte de la
piedra al mercado.

El apelado siguiendo el criterio del juez inferior sostiene
además en su alegato que el contrato no es de arrendamiento
porque no puede cumplirse en él la indispensable condición
que a los arrendamientos fija el artículo 1464 del Código Civil,
o sea, la de devolver la finca en el mismo estado en que se
recibió, dado que se pacta la extracción y venta de piedra y
porque el precio no tiene los caracteres de un canon de
arrendamiento por haberse fijado como una participación en
las utilidades de la finca.

El Código Civil no define en general el concepto de arren-
damiento. Habla de que el arrendamiento puede ser de co-
sas, o de obras o de servicios. Art. 1445, Comp. sec. 4551.
Y en el arrendamiento de cosas, una de las partes se obliga
a dar a la otra el goce o uso de una cosa por tiempo deter-
minado y precio cierto. Art. 1446.

Manresa al referirse al contrato de arrendamiento y a
los artículos equivalentes del Código Civil español dice que
el legislador tuvo buen cuidado de no aventurar una defini-
ción única y en vez de definir el arrendamiento en general,
ha definido, de una parte el arrendamiento de cosas, y de
otra, el arrendamiento de obras y servicios. Tomo 10, págs.
433 y 434.

Se ve, pues, que en el Código Civil español no se quiso
introducir novedad alguna y se conservó la tradición, arran-

cando sus precedentes del derecho romano, al que siguió la
antigua legislación española.   En la obra de Carlos Maynz
sobre el derecho romano, traducción de Pou y Ordinaz, tomo
2, p. 255, podemos leer lo siguiente:

"El arrendamiento presenta una grave analogía con la venta:
se podría aún decir que era la venta del uso determinado de una
cosa o de un trabajo.   Así, pues, la mayor parte de las reglas gene-
rales son comunes a los dos·contratos.   Por esto el contrato de arren-
damiento exige la reunión de las tres condiciones que hemos enu-
merado en la venta, *res, pretium, consensus.*"

    *       *       *       *       *       *       *

En un sentido parecido Scaevola dice: "Podríamos de-
cir sin temor a la paradoja, que el arrendamiento es la com-
praventa temporal de los derechos de uso y fruición sobre
la cosa ajena."   Vol. 24, parte 1ª, p. 402.   Y así puede en-
tenderse que los puntos de contacto que el arrendamiento
tiene con la compraventa es lo que induce a confusión en
ciertos casos.   No siempre además en los arrendamientos se
adopta lo que podríamos decir el tipo ordinario.   Se pactan
a veces en él ciertas condiciones especiales que si hacen más
compleja su naturaleza, no por eso deja de serlo si así lo
han querido y ha sido la intención de las partes, manifestán-
dose esta última por lo menos por el nombre que como tal
le han dado al contrato.   Los glosadores del derecho romano
solían designar esos arrendamientos de clase compleja con
el término de "locatio irregularis."   Pero actualmente pa-
recen existir razones más justificadas, debido a la intensidad
de la vida económica, para que las formas jurídicas sean
más diversas e irregulares sin desvirtuar la esencia del con-
trato.   No sería posible puntualizar la variedad de formas
que puede tomar el arrendamiento, pero "allí donde existe
una apropiación exclusiva y legitimada por el derecho, aun-
que sea en un glaciar de los Alpes o en el pozo profundí-
simo de una mina, allí hay una cosa susceptible de arrenda-
miento."   Scaevola, vol. 24, parte 1ª, p. 394.

[2] Los vocablos "goce" o "uso" que emplea el artículo

1446 del Código Civil al definir el arrendamiento de cosas y que el juez inferior considera que envuelven el mismo concepto son los que denotan la diferencia entre el arrendamiento y la venta. No es lo mismo usar que gozar. Lo primero no da facultad para disponer, implica únicamente el uso de la mera posesión, o sea, obtener de la cosa todo el uso y los servicios que puedan sacarse de ella. Lo segundo ya se acerca más a la venta porque permite al arrendatario hacer suyos los frutos o productos que produzca. Y este derecho en cuanto a las utilidades es el que se ha extendido dentro de la concepción del arrendamiento. Por hábito mental parece que sólo podemos concebir el arrendamiento bajo su aspecto ordinario de usar solamente o disfrutar haciendo nuestro los productos agrícolas o pecuarios. El último concepto se ha extendido a la apropiación de la sustancia misma de la cosa y esto ocurre con las llamadas industrias extractivas, como la explotación de minas y canteras, bosques, caza, pesca, etc. Y nada se encuentra en la jurisprudencia que niegue que tales industrias puedan ser objeto del contrato de arrendamiento.

[3] Parecería ahora claro, dada la naturaleza de esas industrias extractivas, que el fundo no puede ser devuelto como lo recibió el arrendatario. Este es el aspecto que tal vez más ha confundido al juez inferior y que sostiene el apelado. La materia extractiva, como en este caso, la extracción de la piedra, puede llegar hasta la extinción de la cantera, como en las minas puede agotarse el filón o yacimiento, pero el fundo nunca se extingue. Además, el precepto del Código Civil (art. 1464) de que el arrendatario debe devolver la finca, al concluir el arriendo, tal como la recibió, no es imperativo sino de naturaleza supletoria y puede ser derogado o modificado por la voluntad de los contratantes. Manresa, tomo 10, p. 581.

[4, 5] Se discute por otra parte la forma en que se ha fijado el precio y se sostiene por el apelado que no tiene los caracteres de un canon de arrendamiento. El precio cierto

de que habla el art. 1446 del Código Civil quiere decir precio que se puede enumerar o estimar según se trate de dinero, o especies.

"El precio, como la venta, debe ser verdadero y cierto, y consistir en una cantidad determinada de dinero. Cuando se trata de una cosa o de una operación que da frutos u otros productos, el alquiler puede consistir en una cantidad del producto, ya esta cantidad sea determinada de una manera invariable, o ya consista en una cuota parte de los productos." Obra de Maynz citada.

En este caso el precio del contrato se enumeró en parte fijándose una suma de $100 mensuales, hubiera o nó extracción de piedra. Se añadió además una cantidad alícuota por cada metro cúbico dependiente que la producción excediera de cierto límite. Cláusula 5ª del contrato, *supra.* Esta adición ciertamente hace irregular la percepción del precio, pero más bien es una modalidad más o menos *sui géneris* que no desvirtúa el nombre con que las partes han querido calificar el contrato y puede convivir con el arrendamiento. "Si se nos preguntase," dice Scaevola, "cuál era la naturaleza jurídica de un contrato en el que una de las partes concediera el uso y disfrute de un predio de su propiedad a trueque de recibir de la otra parte, cien duros en dinero, diez almudes de habas, cincuenta fanegas' de trigo y el derecho al aprovechamiento de los pastos de un prado por toda la duración del contrato, responderíamos sin ningún linaje de escrúpulo que se trataba de un contrato de arrendamiento." Scaevola, tomo 24, p. 404. No es por otra parte un elemento que hace más compleja o complicada la forma de pago. Sabiendo el número de metros extraídos, la operación no puede ser más simple: es cuestión de una multiplicación.

[6] De igual modo no es razonamiento serio o de peso, que porque se imponga al arrendatario el objeto a que tiene que dedicar el fundo sin que él y el arrendador puedan dedicarse al mismo negocio en otros predios, tal condición afecta el verdadero concepto del arrendamiento. Ya el ar-

tículo 1458, inciso 2º, dispone que el arrendatario está obligado a destinar la cosa al uso pactado, y el acuerdo de las partes de que el arrendatario queda obligado a destinar la finca al solo objeto de la extracción de piedra y que ninguno de ellos puede ejercer la misma industria, es un pacto lícito que en nada varía la esencia del contrato de arrendamiento.

[7, 8] También es objeto de contención cuál pueda ser el medio adecuado para la rescisión del arrendamiento. La demanda de desahucio fué desestimada porque se sostuvo que no se trataba de un contrato de arrendamiento, y porque en el supuesto que así fuese, se sostiene que no procede el juicio de desahucio por tratarse de un arrendamiento de elementos complejos. Hemos rebatido una y otra cosa al analizar la naturaleza del contrato mismo. Añadiremos, sin embargo, en cuanto a los motivos que pueden dar lugar a la rescisión que el precepto del artículo 1459 no limita ni altera la acción de desahucio cuando existe el incumplimiento de cualquiera de las condiciones que dan origen a dicha acción especial, y más bien coexiste con ella. Dicho artículo dice:

"Art. 1459.—Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en los artículos anteriores, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente."

La ley estableciendo el procedimiento de desahucio, aprobada en marzo 9, 1905, (Comp. sec. 1625) si bien alude a las causas de desahucio fué con el fin de fijar la competencia de las cortes que habían de conocer del procedimiento sumario, pero en realidad las causas que se especifican en el artículo 1472 del Código Civil y que dan origen al desahucio han quedado subsistentes. Esta es materia propia del Código Civil como ley sustantiva, mientras que la acción que de ella se deriva corresponde ser regulada por la ley de desahucio, como derecho procesal. Manresa, en relación con este extremo, dice:

"La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe,—dice el art. 1124 del Código Civil, y por medio del desahucio se resuelve o rescinde el contrato de arrendamiento con un procedimiento breve y adecuado a la índole del asunto." Comentarios al Código Civil, tomo 10, p. 630.

El mismo autor en la página 545, 2ª edición del mismo tomo sigue diciendo:

"Debe asimismo tenerse en cuenta que el precepto del artículo 1556 no altera ni limita la eficacia del art. 1569, que fija las justas causas del desahucio y que no puede racionalmente nacer cuestión alguna de la comparación de un artículo con otro, que tienda a desvirtuar la acción de desahucio que el arrendador interponga contra el arrendatario en los casos en que la ley concretamente lo autoriza."

Los artículos 1124, 1556 y 1569 citados están reproducidos en el Código Civil Revisado bajo los números 1091, 1459 y 1472, y ellos, respectivamente, dicen como sigue:

"Art. 1091.—La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe."

*      *      *      *      *      *      *

"Art. 1459.—Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en los artículos anteriores, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente."

"Art. 1472.—El arrendador podrá desahuciar judicialmente al arrendatario por alguna de las causas siguientes:

"1. Haber expirado el término convencional o el que se fija para la duración de los arrendamientos en los artículos 1480 y 1484.

"2. Falta de pago en el precio convenido.

"3. Infracción de cualquiera de las condiciones estipuladas en el contrato.

"4. Destinar la cosa arrendada a usos o servicios no pactados que la hagan desmerecer; o no sujetarse en su uso a lo que se ordena en el número 2 del artículo 1458."

El arrendador es por consiguiente el que puede hacer la elección del procedimiento para obtener la rescisión del con-

trato de arrendamiento, ya haciendo uso del sumario de desahucio o el más amplio del juicio ordinario. No importa que el demandado haya invertido la suma de $30,000 en su industria, como se hace mérito por el juez inferior, para así impulsar su negocio dentro del arrendamiento. Este es un mero incidente que no debió impresionar al juez inferior, y si el arrendatario falta al contrato de algún modo, la elección del remedio subsiste en el arrendador y la corte no tiene poder para sustituir su derecho de acción una vez hecha su elección. El juez inferior erró por tanto al sobreseer el procedimiento de desahucio y no apreciar los méritos del caso.

*La sentencia debe revocarse y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Wolf no tomó parte en la resolución de este caso.