# 2009 DTA 118

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL IV**

AUTORIDAD DE DESPERDICIOS SÓLIDOS
Apelada

v.

E.C. WASTE, INC.
Apelante

Núm. KLAN-09-00002

San Juan, Puerto Rico, a 19 de agosto de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
la Juez Coll Martí y el Juez Vizcarrondo Irizarry

Coll Martí, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece E.C. Waste, Inc. (ECW) y nos solicita la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 24 de noviembre de 2008, notificada a las partes el 8 de diciembre de 2008, en la cual declaró Con Lugar la demanda presentada por la Autoridad de Desperdicios Sólidos de Puerto Rico (ADS) y ordenó el desahucio de ECW de la Estación de Trasbordo de San Juan en el término de veinte (20) días, imponiendo el pago de las costas y la suma de $1,000 por concepto de honorarios de abogados.

ECW se opone por entender que el desahucio fue improcedente en derecho, toda vez que, por la complejidad y los aspectos contractuales que envuelven la controversia, la misma no era susceptible de ser resuelta por la vía sumaria. Sostiene, además, que el tribunal primario adjudicó la controversia faltando una parte indispensable.

Examinado el expediente del caso y con el beneficio de la comparecencia de ambas partes, el caso quedó sometido para adjudicación.

## I

El 29 de junio de 1999, el Municipio de San Juan (Municipio) y E.C. Waste, Inc. (ECW) suscribieron un contrato para el diseño, construcción y operación de una Estación de Trasbordo en terrenos del Municipio por el término de siete (7) años, vencedero el mismo el 30 de junio de 2006. Conforme a lo estipulado por las partes, el contrato podía ser renovado por tres (3) períodos adicionales de un año cada uno, ello a opción exclusiva del Municipio. **[1]** Posteriormente, el 29 de diciembre de 2000, el Municipio otorgó un contrato de arrendamiento con la Autoridad de Desperdicios Sólidos de Puerto Rico (ADS) para el terreno donde ubicaría la Estación de Trasbordo. Dicho contrato fue suscrito por el término de noventa y nueve (99) años y el precio convenido de un dólar ($1) anual. Al mismo tiempo, la ADS suscribió un contrato de subarrendamiento con ECW por siete (7) años para el terreno en cuestión. **[2]** Este contrato se hizo de conformidad con los términos y condiciones contenidas en el contrato otorgado por el Municipio y ECW, teniendo efectividad retroactiva al 29 de junio de 1999, por lo que su vencimiento sería al 30 de junio de 2006. El contrato contenía una cláusula que permitía subarrendar el terreno por tres (3) períodos adicionales de un (1) año cada uno, ello a opción exclusiva de la ADS. El precio convenido para el subarriendo fue de un dólar ($1) anual.

De acuerdo a lo estipulado en ambos contratos, era el Municipio el que tenía el derecho exclusivo para operar la Estación de Trasbordo, pudiendo ejercer el mismo a través de un tercero, en este caso, ECW. Sin embargo, y en lo pertinente al caso ante nuestra consideración, las partes acordaron que:

"No amendment or waiver of any provision of this Agreement, nor consent to any departure by any Party therefore, shall in any event be effective unless the same shall be in writing and signed by all parties hereto,....".

*Amended Agreement for the Modification of an Agreement for the Design, Construcion and Operation of a Solid Waste Transfer Station*, 1 de marzo de 2000, Cláusula 10(I). [Énfasis nuestro].

El 28 de diciembre de 2005, estando vigente el contrato inicial, ECW y el Municipio suscribieron un acuerdo de intención para enmendar el contrato, disponiendo, entre otras cosas, que la relación existente entre las partes se extendería hasta el 30 de junio de 2014, inclusive. Sobre ello, la ADS no tuvo participación alguna ni otorgó su consentimiento.

Así las cosas, el 24 de mayo de 2006, antes del vencimiento del contrato suscrito entre ADS y ECW, la ADS procedió a enviar un comunicado para convocar una reunión con el propósito de negociar los términos y condiciones del contrato y establecer un nuevo canon de arrendamiento, relación contractual que comenzaría a regir a partir del 1 de julio de 2006. Sin embargo y a pesar de los múltiples requerimientos enviados por la ADS, ECW no se presentó a negociar el nuevo contrato de arrendamiento. Ante esto, el 16 de junio de 2006, la ADS le notificó que, por ser éstos la entidad seleccionada por el Municipio para continuar operando la Estación de Trasbordo, se le enviaba el contrato para su evaluación. El mismo contenía los nuevos términos y condiciones que ofrecía la ADS, incluyendo, entre otras cosas, un subarriendo por el término de cinco (5) años y un canon de arrendamiento mensual de $131,826.20. ADS les apercibió, además, que de continuar ocupando la propiedad luego del 30 de junio de 2006, fecha en que vencía el contrato inicial, sin suscribir el nuevo contrato, se procedería a ajustar el canon por la cantidad antes señalada y la relación contractual tendría una vigencia mensual.

Al no poder alcanzar un acuerdo con ECW ni recibir el canon solicitado, la ADS procedió a presentar demanda de desahucio en precario por procedimiento sumario. ECW se opuso a la demanda por entender que ocupa el inmueble objeto de la acción válidamente, puesto que posee justo título por virtud de contrato otorgado con el Municipio, quien no solamente le otorgó el derecho exclusivo de operar la Estación de Trasbordo, sino también le extendió el contrato de servicios hasta el 20 de junio de 2014, lo que a su juicio, obligaba a la ADS a subarrendarle la propiedad y a no alterar el canon inicial. Entiende ECW que esto creó un conflicto de título que impedía que la controversia se adjudicara por la vía sumaria. Además, alegó que por faltar parte indispensable en el pleito, era necesario un procedimiento ordinario.

Luego de varios trámites procesales, el 24 de noviembre de 2008, notificada a las partes el 8 de diciembre del mismo año, el foro primario emitió Sentencia en la que declaró Con Lugar la Demanda presentada y ordenó el desahucio de ECW de la Estación de Trasbordo de San Juan en un término de veinte (20) días. A su vez, impuso las costas del litigio y la suma de $1,000 por concepto de honorarios de abogados. Entendió el tribunal que, puesto que, conforme al contrato enmendado, se requería la participación de la ADS para la validez de cualquier enmienda, al ser excluida de las negociaciones entre el Municipio y ECW para extender el período de vigencia, el mismo no tenía validez. Por lo tanto, por carecer ECW de justo título para ostentar la posesión de la misma, el derecho real sobre la Estación de Trasbordo pertenece a ADS.

En cuanto a la alegación de falta de parte indispensable, el foro sentenciador resolvió que, como subarrendadora, la ADS tiene derecho a ejercitar contra ECW todos los derechos de dominio sobre la propiedad sin tener que incluir al Municipio como parte del pleito. Además, el propio Municipio expresó que era una controversia entre ADS y ECW para lo cual su participación no era necesaria.

Inconforme con tal determinación, ECW acude ante este Tribunal y al solicitar la revisión de la Sentencia emitida por el TPI aduce la comisión de varios errores, a saber:

"Erró el TPI al determinar por la vía sumaria que no existe un conflicto de título en torno a la posesión de la Estación de Trasbordo.

Erró el TPI al determinar por la vía sumaria que la ADS ostenta la facultad para modificar o implementar un nuevo canon de arrendamiento unilateralmente.

Erró el TPI al determinar por la vía sumaria que el Municipio de San Juan no es parte indispensable en el procedimiento de marras.

Erró el TPI al imponer a la demandada-apelante $1,000 de honorarios de abogados sin mediar determinación de temeridad."

## II

El Código Civil de Puerto Rico dispone, en lo pertinente, que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. Código Civil de Puerto Rico, Art. 1042; 31 L.P.R.A. sec. 2992. En el caso de las obligaciones que nacen de los contratos, éstas tienen fuerza de ley entre las partes. Código Civil de Puerto Rico, Art. 1044; 31 L.P. R.A. sec. 2994; *Jarra Corporation v. Axxis Corporation*, 155 D.P.R. 764 (2001). Para que exista el contrato, las partes tienen que consentir a obligarse a dar alguna cosa o prestar algún servicio, pudiendo establecer para ello cualquier pacto, cláusula o condición, siempre que no sean contrarios a la ley, la moral o el orden público. Código Civil de Puerto Rico, Art. 1207; 31 L.P.R.A. sec. 3372. La validez del mismo dependerá de la existencia de tres (3) requisitos esenciales, a saber, consentimiento, objeto y causa. El Código Civil de Puerto Rico dispone que:

"No hay contrato, sino cuando concurren los requisitos siguientes:

1- Consentimiento de los contratantes;

2- Objeto cierto que sea materia del contrato;

3- Causa de la obligación que se establezca."

Código Civil de Puerto Rico, Art. 1213; 31 L.P.R.A. sec. 3391.

En cuanto al contrato de arrendamiento, el Código Civil de Puerto Rico dispone para dar en arrendamiento las cosas y los servicios. Cuando se habla de arrendamiento de cosas, una parte se obliga a dar a la otra el goce o uso de la cosa por un tiempo determinado y un precio cierto. Código Civil de Puerto Rico, Art. 1433; 31 L.P.R.A. sec. 4012. En los casos de los arrendamientos por tiempo determinado, su vencimiento será el día prefijado por las partes contratantes, sin que para ello haya necesidad de requerimiento. Código Civil de Puerto Rico, Art. 1455; 31 L.P.R.A. sec. 4062. Si al terminar el contrato el arrendatario continúa disfrutando de la cosa quince (15) días después de su vencimiento sin que haya habido requerimiento del arrendador, se entiende que ocurre la tácita reconducción, 31 L.P.R.A. sec. 4063. En este caso, se presume el arrendamiento hecho por años cuando se ha fijado un alquiler anual, o por meses cuando es mensual. Código Civil de Puerto Rico, Art. 1471; 31 L.P.R.A. sec. 4092.

## III

### Desahucio en Precario

Por otro lado, el Artículo 620 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 2821, establece que los dueños de una finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes tienen derecho a promover una acción de desahucio, la cual procede:

"[…]contra inquilinos, colonos y demás arrendatarios, los administradores encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna".

Código de Enjuiciamiento Civil, Art. 621, 32 L.P.R.A. sec. 2822.

La acción de desahucio es una acción posesoria donde sólo se puede discutir el derecho a la posesión [3] de un inmueble, por lo que no pueden ventilarse en este proceso cuestiones de título. *Escudero v. Mulero,* 63 D.P.R. 574 (1944). Ello así, ya que el procedimiento de desahucio es uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ello. *C.R.U.V. v. Román,* 100 D.P.R. 318 (1971).

Un análisis de la normativa antes expuesta nos lleva a concluir que, si existiera un conflicto de título entre el demandante y el demandado, la acción de desahucio no procedería por ser ésta una de carácter sumario. Corresponde al demandante en desahucio probar sus alegaciones de titularidad y demostrar que no es necesario un juicio declarativo, sin que pueda descansar en la mera alegación de que el demandado carece de título o es un mero precarista. [4] En cuanto al demandado, para poder derrotar la contención del demandante y demostrar la existencia de un conflicto de títulos en pleito de desahucio que haga improcedente el procedimiento sumario, deberá presentar prueba suficientemente robusta y no una mera alegación de título. *Crespo v. Irizarry,* 71 D.P.R. 963 (1950). Si el demandado en desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar el inmueble y que tiene un título tan bueno o mejor que el del demandante, dicho conflicto deberá ser resuelto en un juicio ordinario. *Escudero v. Mulero, supra; C.R.U.V. v. Román, supra.*

En el caso de los contratos de arrendamientos, el Código Civil de Puerto Rico dispone para que el arrendador pueda desahuciar judicialmente al arrendatario cuando haya expirado el término, o ante la falta de pago del canon convenido, dispone el Código Civil de Puerto Rico que:

"El arrendador podrá desahuciar judicialmente al arrendatario por alguna de las causas siguientes:

1- Haber expirado el término convencional o el que se fija para la duración de los arrendamientos en las secs. 4083 y 4092 de este título.

2- Falta de pago en el precio convenido.

3- Infracción de cualquiera de las condiciones estipuladas en el contrato.

4- Destinar la cosa arrendada a usos o servicios no pactados que la hagan desmerecer; o no sujetarse en su uso a lo que se ordena en el inciso (2) de la sec. 4052 de este título".

Código Civil de Puerto Rico, Art. 1459; 31 L.P.R.A. sec. 4066.

De la disposición legal antes citada, surge claramente el derecho de un arrendador de lograr la rescisión del contrato haciendo uso del proceso sumario de desahucio, pudiendo elegir hacer su reclamación por la vía sumaria o por medio de un juicio ordinario. Por último, debemos señalar que aquel arrendatario que a su vez es subarrendador, también podría instar acción de desahucio contra el subarrendatario para desalojar a éste de la propiedad que ocupa; ello así, ya que "en lo que al subarrendatario concierne, éste ocupa con relación al subarrendador la misma posición que el arrendatario ocupa respecto del arrendador". *Luis E. Soler, Inc. v. Pont Flores,* 78 D.P.R. 879 (1956).

Habiendo discutido el derecho aplicable, procedemos a resolver la controversia ante nuestra consideración.

## IV

Como estableciéramos anteriormente, el Municipio y ECW suscribieron un contrato de arrendamiento de servicios para operar la Estación de Trasbordo de San Juan por un período de siete (7) años, al que compareció como otorgante la ADS. Puesto que, posteriormente, el Municipio arrendó el terreno donde enclavaría la Estación de Trasbordo a ADS, ADS y ECW entraron en un contrato de subarrendamiento por el término de siete (7) años para la construcción y operación de dicha estación. El contrato vencía, por sus propios términos, el 30 de junio de 2006 y el canon de arrendamiento pactado era de $1 anual. El acuerdo contaba con una cláusula de renovación a opción exclusiva de ADS.

Sostiene ECW como primer señalamiento de error que, por existir un conflicto de título en torno a la posesión de la Estación de Trasbordo, el TPI no podía resolver la controversia por la vía sumaria. Alega ECW que la relación contractual entre las partes aún se encontraba vigente por haber sido enmendado el contrato original de éstos con el Municipio, por lo que tenían derecho a la posesión hasta el año 2014. Entiende el Apelante que dicha enmienda crea un conflicto de título en cuanto al derecho a poseer la Estación de Trasbordo, por lo que era improcedente evaluar la controversia por la vía sumaria. Por los fundamentos que presentaremos a continuación, entendemos que no le asiste la razón al Apelante. Veamos.

Sostiene ECW que, puesto que el contrato suscrito con el Municipio extendía el período de vencimiento, la ADS estaba obligada a otorgar un contrato de subarrendamiento por un término similar por haber sido ellos los elegidos por el Municipio para proveer el servicio. Ante esto, aducen que ADS carecía de facultad alguna para elegir no renovar el contrato de subarrendamiento. Ello por sí sólo, según la contención de ECW, creó un conflicto de título que hacía improcedente la acción sumaria.

No hay duda alguna de que el Municipio posee un derecho exclusivo para elegir quién se encargará de operar la Estación de Trasbordo. Sin embargo, el propio Municipio estipuló en su relación contractual con ECW, Cláusula 10(I), que cualquier cambio o enmienda al acuerdo necesitaba para su validez el consentimiento de todos los otorgantes. Según surge de la prueba presentada, el contrato original fue posteriormente enmendado para incluir como parte de la relación contractual a ADS. Por lo tanto, conforme al mismo, el acuerdo posterior entre el Municipio y ECW necesitaba el consentimiento de ADS para que el mismo fuese válido. Puesto que en ningún momento ADS dio su consentimiento a la referida enmienda, no podemos sostener su validez.

Sabido es que, en materia de contratación, nuestro ordenamiento jurídico reconoce la autonomía de la voluntad, pudiendo las partes contratantes establecer las cláusulas y condiciones que tengan por conveniente. 31 L.P.R.A. sec. 3372; *De Jesús González v. Autoridad de Carreteras,* 148 D.P.R. 255 (1999). Las partes que suscriben un contrato no solamente están sujetas a cumplir con lo pactado, sino también con las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley. Código Civil de Puerto Rico, Art. 1210; 31 L.P.R.A. 3375.

De acuerdo con estos principios de derecho, la cláusula contractual pactada por el Municipio, la ADS y ECW sobre la necesidad del consentimiento de todas las partes contratantes para la validez de cualquier enmienda era clara y libre de ambigüedades, por lo que tanto el Municipio como ECW estaban obligados no solamente a cumplir con lo pactado, sino a las consecuencias que ello conllevaba. Era su obligación obtener el consentimiento de la ADS.

Una vez determinado que la enmienda realizada por el Municipio y ECW sin el consentimiento de ADS no tenía validez alguna, es menester concluir que el contrato original venció el 30 de junio de 2006, lo que convirtió a ECW en un mero precarista. Vencido el término, es la ADS, quien arrendó el predio de terreno por 99 años, la que tiene derecho a poseer la propiedad en cuestión. La mera alegación por parte de ECW de que, por ser ellos los elegidos por el Municipio para operar la Estación de Trasbordo y por ser el Municipio el que tiene el derecho exclusivo para hacer tal elección, ADS estaba obligada a otorgar el contrato de subarrendamiento, no le concede la titularidad del inmueble ni le da derecho a poseer. Aunque el Municipio es el que posee la autoridad exclusiva para operar o elegir a un tercero para operar la Estación, ello no implica que tal derecho les conceda la facultad de ir en contra de lo pactado. No debemos olvidar que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes. Código Civil de Puerto Rico, Art. 1044, 31 L.P.R.A. sec. 2994. Por lo cual, al no haberse producido prueba suficientemente robusta que pusiera al TPI en la posición de entender que existía un conflicto de título, el Tribunal podía evaluar la controversia por la vía sumaria. Ha expresado el Tribunal Supremo de Puerto Rico que "cuando el demandado en desahucio opone como único título su condición de arrendatario del inmueble de que se trata, no existe en el caso conflicto alguno que impida la acción". *Cruz v. Sanz,* 67 D.P.R. 173 (1947).

Finalmente, es menester aclarar que, conforme a la Cláusula 2 del contrato de subarrendamiento, el contrato podía ser renovado por tres (3) períodos adicionales de un (1) año cada uno, a opción exclusiva de ADS. Dispone la cláusula, en lo pertinente al caso ante nuestra consideración:

"Term of this Sublease Agreement. The term of this Sublease Agreement shall commence on the date hereof (the 'Closing Date') and shall extend for a period of seven (7) years from the date thereof, in accordance with the terms and conditions of The Contract for the Design, Construction and Operation of a Municipal Solid Waste Transfer Station dated June twenty-nine (29), nineteen hundred ninety-nine (1999), entered into by and between the Municipality and E.C. Waste, Inc., and in the Amended Agreement for the Modification of an Agreement for the Design, Construction and Operation of a Solid Waste Transfer Station of March one (1), two thousand (2000)... This Sublease Agreement may be renewed for up to three (3) additional renewal periods of one year each. These renewals are exercisable at the sole option of SWMA....".

Sublease Agreement, Cláusula 2. [Énfasis suplido].

Un análisis de la antes citada disposición contractual nos lleva a concluir que, conforme a lo pactado, es la ADS la única que puede determinar si procede a renovar el contrato de subarrendamiento.

Concluimos por tanto. que al no existir contrato alguno entre las partes por haber vencido el mismo y al no haber ECW pagado el canon de arrendamiento, ADS tenía derecho a solicitar el lanzamiento de ECW, por tener derecho a la posesión de la propiedad. El Tribunal Supremo ha establecido que el subarrendatario que se niegue

a aceptar las condiciones que un nuevo arrendador le ofrezca para un nuevo contrato de subarriendo, y continúe detentando la posesión sin contrato alguno y sin pagar canon o merced alguna, es un perturbador de mero hecho contra el cual el nuevo arrendatario, y no el dueño de la propiedad arrendada, tiene derecho a ejercer la acción que le concede la sec. 4057 del Título 31. *Ruiz Morales v. Licha,* 64 D.P.R. 804 (1945). "En ausencia de pasión, prejuicio, parcialidad o error manifiesto del tribunal de instancia, no debemos intervenir con esta determinación de hechos del foro primario...". *Lugo Ortiz v. Mun. de Guayama,* 163 D.P.R. 206 (2004); *Trinidad García v. Chade,* 153 D.P.R. 280, 291 (2001).

Por todo lo antes expuesto, determinamos que no se cometió el primer señalamiento de error.

## V
**Modificación del canon de arrendamiento**

Como segundo error, sostiene ECW que el foro de instancia no podía determinar por la vía sumaria que ADS ostentara la facultad para modificar unilateralmente el canon de arrendamiento. Alega ECW que, puesto que no hubo un convenio sobre el canon o precio de renta convenido, ello derrota la procedencia de la acción de desahucio en precario, toda vez que no hay un precio cierto y determinado que sirva de apoyo a la acción. Tampoco le asiste la razón al Apelante.

Primeramente, debemos señalar que, ante el incumplimiento del arrendatario, es al arrendador a quien le corresponde elegir el procedimiento para obtener la rescisión del contrato, ya sea usando el trámite sumario del desahucio, o el procedimiento ordinario. *Rossy v. Del Valle,* 34 D.P.R. 726 (1925).

El Apelante sostiene que, conforme a lo resuelto por el Tribunal Supremo de Puerto Rico en el caso *Mora Development v. Sandín,* 118 D.P.R. 733, 748 (1987), "en la ausencia de precio cierto y determinado que pueda servir de apoyo a la acción de desahucio, ésta no procede". Sin embargo, dicho caso debe distinguirse de la controversia ante nuestra consideración. En el caso de *Mora Development v. Sandín, Id.,* existía un contrato válido entre las partes y la controversia giraba en torno a la admisibilidad de prueba sobre el incumplimiento del arrendador en un proceso sumario de desahucio cuando la reclamación se basa en la falta de pago y el arrendatario desea levantar el mismo como defensa para su incumplimiento. Es claramente distinguible tal situación de hechos ante nuestra consideración, dado que en el caso de *Mora Development v. Sandín, Id.,* existía un contrato vigente entre las partes. En este caso, sin embargo, estamos ante una situación donde no existe un contrato por haber vencido el mismo el 30 de junio de 2006. No hay aquí un desacuerdo con la cantidad de renta o canon establecido, sino una situación donde el arrendador ofrece unos términos y condiciones que no fueron aceptados por el arrendatario y éste continúa detentando la propiedad, a pesar de haber vencido el término y sin pagar canon alguno.

No se trata aquí de una controversia sobre un desacuerdo en el canon pactado, sino de solicitar el lanzamiento de alguien que detenta la posesión sin derecho a ello. Por esa razón, no erró el tribunal sentenciador al ordenar el desahucio de ECW por la vía sumaria.

## VI
**Falta de parte indispensable**

Sostiene ECW, como tercer señalamiento de error, que el foro primario no podía resolver la controversia por la vía sumaria, puesto que faltaba el Municipio, siendo éste una parte indispensable para resolver la misma.

Comenzaremos la discusión de este error aclarando la contención del foro de instancia de que las Reglas de Procedimiento Civil no son de aplicación a las acciones de desahucio. *Cesaní Nieto v. Carló,* 86 D.P.R. 407 (1962); *Roger v. Torres,* 71 D.P.R. 852 (1950). Aunque el Código de Enjuiciamiento Civil nada dispone sobre

la aplicabilidad de las Reglas de Procedimiento Civil a una acción de desahucio y el Tribunal Supremo de Puerto Rico ha establecido que, bajo ciertas circunstancias, no son de aplicación al mismo, la Regla 1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R. 1, establece que las mismas son de aplicación a todos los procedimientos de naturaleza civil. Siendo la acción de desahucio un procedimiento civil, entendemos que aquellas reglas que no estén en conflicto con las disposiciones del Código de Enjuiciamiento Civil y que no desvirtúen el carácter sumario del mismo, podrían utilizarse, ello con el fin de lograr una solución justa, rápida y económica. 32 L.P.R.A. Ap. III, R. 1.

Sin embargo, un análisis de la Regla 16.1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R. 16.1 (Regla 16.1), nos lleva al mismo resultado, a saber, el Municipio no era una parte indispensable que pudiera verse afectada con la sentencia dictada. Veamos.

Conforme la Regla 16.1, es parte indispensable aquella persona cuyos derechos e intereses podrían quedar destruidos o afectados por la sentencia dictada y sin cuya presencia el tribunal no podría ofrecer un remedio eficaz y completo, por lo que, lo que en su día resuelva no tendría validez. *Pérez Rosa v. Morales Rosado,* Opinión de 28 de septiembre de 2007, **2007 J.T.S. 176**; *Asoc. Res. San Pedro Estates v. Edgardo Morales Ramírez,* 159 D.P.R. 675 (2003). No se trata, sin embargo, de un interés futuro o una mera especulación, sino de un interés real e inmediato. *Pérez Rosa v. Morales Rosado, supra.*

Es el Tribunal quien, conforme los hechos del caso, deberá hacer una determinación sobre la necesidad de acumular una parte por ser indispensable para la solución de la controversia. *Unisys v. Ramallo Brothers,* 128 D.P.R. 842 (1991). Puesto que la finalidad de la regla es evitar que una parte sea privada de un debido proceso de ley, la defensa de falta de parte indispensable conlleva la desestimación de la controversia y puede ser levantada en cualquier momento del procedimiento por incidir en la jurisdicción del tribunal. *Pérez Rosa v. Morales Rosado, supra; Rodríguez Rodríguez v. Moreno Rodríguez,* 135 D.P.R. 623 (1994).

Al aplicar la normativa antes expuesta a los hechos ante nuestra consideración, forzoso es concluir que no le asiste la razón a ECW. Primeramente, la controversia gira en torno a una reclamación que hiciera la ADS para desalojar de la propiedad a ECW por falta de pago del canon de arrendamiento. La prueba presentada demostró que la ADS tiene el derecho de dominio sobre la propiedad en cuestión, ello por virtud de un contrato de arrendamiento por 99 años con el Municipio. El propio Municipio admitió la existencia de tal derecho al establecer que su participación en la controversia no era necesaria por tratarse de un desacuerdo entre las partes en cuanto al arrendamiento. Además, como estableciéramos anteriormente, puesto que el arrendatario que a su vez es subarrendador, tiene el derecho de ejercitar contra el subarrendatario todos los derechos que para el goce o disfrute de la cosa tendría el dueño por estar éstos derechos enajenados a él, la ADS podía válidamente desalojar de la propiedad a quien detente la misma sin pagar canon alguno. *Luis E. Soler, Inc. v. Pont Flores, supra.*

Por lo cual, concluimos que teniendo la ADS el derecho de dominio sobre el terreno donde enclava la Estación de Trasbordo, ésta puede instar una acción de desahucio sin necesidad de incluir al Municipio por no ser éste una parte indispensable que pudiera ver afectados sus derechos o intereses. El Municipio enajenó su derecho al arrendar la propiedad a la ADS.

## VII

Como último error, señala ECW que no podía el tribunal primario imponer honorarios de abogado sin mediar determinación de temeridad.

La Regla 44.1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R. 44.1 (Regla 44.1), establece que se concederán costas a la parte a cuyo favor se resuelva el pleito. En estos casos, el Tribunal concederá únicamente los gastos necesariamente incurridos en la tramitación de la acción. Regla 44.1, *supra.*

Los gastos de honorarios de abogado, sin embargo, no forman parte de las costas de un pleito. A diferencia de la imposición de costas la cual es obligatoria contra la parte perdidosa de una acción, la imposición de honorarios de abogado es una discrecional que procede en aquellos casos en que la parte fue temeraria al proseguir la acción. *Colondres v. Bayrón*, 114 D.P.R. 833 (1983). Su imposición dependerá de la apreciación del tribunal. *Fernández Mariño v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987). Sin embargo, una vez el tribunal determine la existencia de temeridad, la imposición de los honorarios sería obligatoria. *Blas Toledo v. Hospital Guadalupe*, 146 D.P.R. 267 (1998), *Fernández Mariño v. San Juan Cement Co., Inc., supra*. El Tribunal Supremo de Puerto Rico ha reconocido como acciones temerarias las siguientes:

"1- Hacer necesario un pleito que se pudo evitar;

2- Prolongar innecesariamente un pleito;

3- Causar que otra parte incurra en gestiones evitables;

4- Contestar el demandado una demanda y negar su responsabilidad total, aunque la acepte posteriormente;

5- Defenderse el demandado injustificadamente de la acción;

6- Si el demandado en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad, limitando la controversia a la fijación de la cuantía a ser concedida;

7- Si el demandado se arriesga a litigar un caso del que se desprendía *prima facie* su negligencia;

8- Negar un hecho que le consta es cierto al que hace la alegación." [Citas Omitidas].

*Fernández Mariño v. San Juan Cement Co., Inc., supra.*

Al hacer una determinación de temeridad, el tribunal debe tomar en consideración: (1) la naturaleza del pleito; (2) las cuestiones de derecho envueltas; (3) tiempo invertido; (4) cuantía de la controversia; (5) los esfuerzos y la actividad profesional que haya tenido que desplegarse, y (6) la habilidad y reputación de los abogados. *Ortiz v. U.P.R.*, 128 D.P.R. 234 (1991).

En la controversia ante nuestra consideración, al dictar sentencia, el tribunal impuso no solamente el pago de costas del proceso, sino también una cuantía en concepto de honorarios de abogado. Tal imposición respondió necesariamente a la determinación por parte del Tribunal de que el demandado actuó de forma temeraria, razón por la cual el foro primario entendió que se debía compensar los perjuicios económicos y las molestias sufridas por la ADS. *Blas Toledo v. Hospital Guadalupe, supra*. No hay duda de que ECW tenía conocimiento de que el contrato suscrito con la ADS había vencido por sus propios términos el 30 de junio de 2006 y que la enmienda que hiciera con el Municipio requería el consentimiento expreso de la ADS para su validez, cláusula que expresamente aceptó al suscribir el contrato original con el Municipio. Por tratarse de una determinación que descansa en la sana discreción del tribunal sentenciador, ni la imposición ni la cuantía se variará en apelación a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Ramírez v. Club Cala*, 123 D.P.R. 339 (1989).

La contención del apelante, ECW, de que el foro de instancia no hizo determinación alguna de temeridad, tampoco tiene fundamentos. Sabido es que resulta suficiente que el tribunal consigne en la sentencia la imposición de los honorarios, sin que tenga que hacer un pronunciamiento especial y separado a tales efectos, toda vez que la condena en honorarios constituye una determinación implícita de temeridad. *Insurance Co. of*

*Puerto Rico v. Tribunal Superior,* 100 D.P.R. 405 (1972).

Ante esto, resolvemos que no erró el tribunal primario al imponer honorarios de abogado, determinación que no constituyó un abuso de discreción.

## VIII

Por todo lo antes expuesto, CONFIRMAMOS la Sentencia apelada en la que el Tribunal de Primera Instancia declaró Con Lugar la Demanda presentada por la ADS y ordenó el desahucio de ECW con la correspondiente imposición de costas y honorarios de abogado.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 118

**1.** Por virtud de un contrato enmendado, el 3 de marzo de 2000, la ADS fue incluida en el contrato, compareciendo al mismo como otorgante, junto con el Departamento de Recursos Naturales y la Puerto Rico Infrastructure Management Group, Inc.

**2.** Conforme al contrato de arrendamiento del terreno suscrito por el Municipio y la ADS, *Ground Lease Agreement,* Cláusula 12, ADS podía subarrendar la propiedad a ECW o sus subsidiarias, compañías o entidades, o a cualquier otra entidad contratada por el Municipio para operar la Estación de Trasbordo.

**3.** Reconoce el Código Civil de Puerto Rico, Artículo 360, 31 L.P.R.A. sec. 1421, la posesión natural como "la tenencia de una cosa o el disfrute de un derecho por una persona", posesión que puede tenerse, conforme al Artículo 362 del Código Civil, 31 L.P.R.A. sec. 1423, en carácter de dueño o como mero tenedor de la cosa o derecho para conservarla o disfrutarle, perteneciendo el dominio a otra.

**4.** En *C.R.U.V. v. Román, supra,* el Tribunal Supremo de Puerto Rico definió el término precarista como aquel que ocupa el inmueble sin otro título que la mera tolerancia del dueño o poseedor, ya sea porque nunca haya tenido título o porque lo haya perdido.